J-A30024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S., MOTHER | |
| | No. 1334 MDA 2016 |

Appeal from the Decree of July 3, 2016
In the Court of Common Pleas of Huntingdon County
Orphans' Court at No(s): CP-31-OC-12-2016

BEFORE: BOWES, OLSON AND STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 19, 2016**

Appellant, A.S., appeals from the decree that was entered on June 23, 2016 and made final on July 3, 2016, which involuntarily terminated Appellant's parental rights to her minor child, A.P. (born in October 2013) (hereinafter "Child"). We affirm.

On March 18, 2016, Huntingdon County Children and Youth Services Agency (hereinafter "the Agency"), filed a petition for the involuntary termination of Appellant's parental rights (hereinafter "TPR Petition").[1] As the Agency averred, on August 15, 2014, the trial court entered an order

---

[1] On that same date, the Agency filed a petition to involuntarily terminate the parental rights of Child's natural father, Z.P. (hereinafter "Father"). Father was served with the termination petition and the trial court appointed counsel to represent Father; however, Father did not appear at the termination hearing. The trial court terminated Father's parental rights to Child by decree entered on June 23, 2016 and made final on July 3, 2016. Father has not filed a notice of appeal from the trial court's termination order and Father is not a party to the current appeal.

finding that Child was dependent and awarding the Agency legal and physical custody of Child. The Agency averred:

> At the time [Child] was originally placed, [Appellant] had overdosed on heroin and was subsequently arrested for burglary and placed in jail. Since that time, [Appellant] has either remained in jail or in a halfway house in compliance with sentences she received through the criminal justice system. [Appellant] absconded from the halfway house on February 10, 2016. At the time of this petition, a warrant for her arrest has been issued. . . . [H]er present whereabouts are unknown.

TPR Petition, 3/18/16, at ¶¶ 3 and 8 (some internal capitalization omitted).

Within the TPR Petition, the Agency claimed that: Appellant was incapable or unwilling to care for Child; Child "has been in placement in excess of [12] months;" Appellant has "made little, if any progress in remedying the issues and concerns which led to [Child's] placement on August 15, 2014;" and, "[t]he conditions which led to the removal or placement of [Child] continue to exist and termination of [Appellant's] parental rights would best serve the needs and welfare of [Child]." *Id.* at ¶¶ 10-26. The Agency sought termination of Appellant's parental rights under 23 Pa.C.S.A. §§ 2511(a)(2), (5), and (8). *Id.* at ¶¶ 13-26.

The trial court appointed counsel to represent Appellant and then scheduled a termination of parental rights hearing for June 23, 2016. However, although Appellant's counsel appeared for the June 23, 2016 hearing, Appellant did not personally appear at the hearing.

- 2 -

During the hearing, the Agency presented the testimony of Agency caseworker Rose Sanders, who was assigned Child's case. As Ms. Sanders testified:

> The case came into us on intake on June 2, 2014[,] . . . that there were concerns that [Appellant] was hiding from the caseworkers and didn't want to do drug screens. There were concerns that she was using heroin. She was neglecting [Child]. There [were] reports that [Child] was crying all the time and had diaper rash and that there were concerns with home conditions.
>
> . . .
>
> On July 21st of 2014[, Appellant] overdosed . . . on heroin.

N.T., TPR Hearing, 6/23/16, at 4.

Ms. Sanders testified that, after Appellant's overdose, "[Appellant] was arrested for theft[; s]he was caught in the act and [the police] notified [the Agency] that they were arresting her." *Id.* at 5. As a result, on August 15, 2014, the trial court declared Child dependent and placed Child in a foster home. *Id.* at 4-5.

On August 27, 2014, Child was transferred from the foster home to the care of Father. Ms. Sanders testified:

> After [Child] was placed with [Father], there were continued concerns of him testing positive for drugs but he was living with his parents at the time, so there were other caregivers.
> . . .
>
> [O]n December 18[,] 2014, [Father] got kicked out of his parents' home and he was homeless. So on December 19, 2014, the Agency filed an EPC and we had to chase [Father] all over town for about eight hours until we found him and [Child] in the middle of the night in the cold.

. . .

> [Father] was caught by the Mount Union Police and the State Police [were] involved. They found him walking down the street carrying [Child] in freezing weather at like 12:30 at night. . . . [Child] was dressed but he was dirty. He was hungry, he was thirsty and he was freezing. His face was red, beet red, from the cold.

*Id.* at 5-6 and 22.

Moreover, Ms. Sanders testified that the authorities had to "chase[] [Father] all over town" even though Father knew that the Agency was looking for him. *Id.* at 6. According to Ms. Sanders: "[Father] was in communication with us on and off on cell phone and refused to meet with us and refused to talk to us and meet with us face-to-face to discuss what we were doing." *Id.*

On December 19, 2014, the Agency placed Child in E.H.'s foster home. Ms. Sanders testified that: Child has remained in E.H.'s home continuously since placement; E.H.'s home is pre-adoptive; Child is doing very well in E.H.'s home and is "part of their family;" Child refers to E.H. as "mom" and "looks at them as his family;" and, "an adoption and a permanent home for [Child would] be in [Child's] best interests." *Id.* at 6, 10, and 29.

Ms. Sanders testified that Appellant was incarcerated at the time Child was placed in E.H.'s home. *Id.* at 7. However, on August 12, 2015, Appellant was released to a Harrisburg halfway house and "the Agency

beg[a]n working with her to have visits [with Child] at the halfway house."
*Id.* at 8.

Ms. Sanders testified that, from August 12, 2015 until October 2015, Appellant had two failed tests for alcohol at the halfway house and, as a result, Appellant was not permitted to leave the halfway house to visit Child. *Id.* at 11. Therefore, Ms. Sanders testified, the Agency twice traveled from Huntingdon to Harrisburg, with Child, so that Appellant could visit with Child. *Id.* However, Ms. Sanders testified:

> [the last visit] didn't go too well. It ended sooner than expected because [Appellant] had a breakdown of sorts when she was requested to change [Child's] diaper and she couldn't bring herself to do it and cried and asked for the foster mom to come back in and do it.

*Id.* at 17.

Ms. Sanders testified that she last heard from Appellant in October 2015. *Id.* Further, Ms. Sanders testified, Appellant absconded from the halfway house on November 10, 2015 and, after a warrant was issued for her arrest, Appellant was arrested and incarcerated at SCI-Muncy. *Id.* at 8-9 and 11. Ms. Sanders testified that Appellant was paroled "approximately a week or two" prior to the TPR hearing. *Id.* at 9. Nevertheless, Ms. Sanders testified that Appellant did not communicate with the Agency or with Child after her arrest. *Id.* at 9.

Ms. Sanders also testified that Appellant: does not have the insight or ability to care for Child; has not been successful in obtaining and

maintaining a stable home for Child; and, has not remedied the situation that led to Child being placed and remaining in placement. *Id.* at 10-11.

At the conclusion of the hearing, the trial court entered the following decree:

<u>DECREE *NISI*</u>

NOW, this 23rd day of June, 2016, the [trial] court makes the following findings of fact, conclusions of law[,] and decree *nisi*:

FINDINGS OF FACT

1. [Appellant] . . . is the natural mother of [Child].

2. [Appellant] was duly served by [the] Deputy Sheriff of Lycoming County, Pennsylvania, with [] service . . . relative to a Petition to Involuntarily Terminate Parental Rights regarding [Child].

3. [Appellant] failed to appear at the termination of parental rights hearing held June 23, 2016.

4. [Appellant] has been represented by counsel since [Child] was declared dependent on August 15, 2014. Similarly, she was represented by counsel in the termination proceeding.

5. At the time of the hearing, [Appellant] failed to attend; however, her counsel was in the courtroom and available to represent her.

6. Testimony elicited at the termination hearing indicates that [Appellant] was recently paroled from SCI-Muncy.

CONCLUSIONS OF LAW

1. The [trial] court was presented with sufficient factual evidence/information to support the involuntary termination of [Appellant's] parental rights.

2. Termination of the parental rights of [Appellant] is in the best interests of [Child].

3. The petitions, hearings[,] and procedures followed by the Agency are in compliance with the Pennsylvania Adoption Act.

DECREE *NISI*

The parental rights of [Appellant] regarding [Child] . . . are hereby terminated *nisi*. Huntingdon County Children's Services is directed to obtain [Appellant's] current address from either SCI-Muncy or the Pennsylvania Board of Probation and Parole. Thereafter, a copy of these findings of fact, conclusions of law[,] and decree *nisi* shall be served on [Appellant] at her address by both certified mail and first class mail.

[APPELLANT] SHALL HAVE TEN [] DAYS FROM THE DATE THIS DECREE *NISI* IS MAILED TO FILE OBJECTIONS OR EXCEPTIONS IN THE OFFICE OF THE CLERK OF THE ORPHANS' COURT FOR HUNTINGDON COUNTY.

IF NO WRITTEN OBJECTIONS OR EXCEPTIONS ARE FILED WITHIN THE TIME ALLOWED, THIS DECREE *NISI* SHALL BECOME FINAL WITHOUT THE NEED FOR ANY FURTHER ACTION BY THE COURT.

Trial Court Decree, 6/23/16, at 1-3 (some internal capitalization omitted).

Appellant did not file exceptions to the decree[2] and, on July 3, 2016, the decree became final by its own terms. *Id.* at 3.

On July 18, 2016, Appellant (through counsel) filed a timely notice of appeal from the termination decree. Following a remand from this Court,

---

[2] Appellant did not need to file exceptions to preserve her claim on appeal. *See* Pa.O.C.R. 7.1 (effective until October 31, 2016) (providing that the filing of exceptions is optional).

the trial court issued a Pennsylvania Rule of Appellate Procedure 1925(a) opinion in support of its decree. Within the trial court's opinion, the trial court declared that it terminated Appellant's parental rights to Child under 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b). Further, the trial court recited the relevant facts that, it held, the Agency had proven by clear and convincing evidence and which supported its decision in this matter. **_See_** Trial Court Opinion, 11/29/16, at 1-8.

Appellant now raises the following claim to this Court:

> Did the [trial court] err when it terminated [Appellant's] parental rights to [Child], given that the evidence presented was insufficient as a matter of law to support a termination of [Appellant's] parental rights, and that [Appellant] had made efforts and progress towards alleviating the conditions that led to the placement of [] Child?

Appellant's Brief at 4.[3]

_____

[3] We note that Appellant did not file her statement of errors complained of on appeal contemporaneously with her July 18, 2016 notice of appeal, as required by Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). Pa.R.A.P. 1925(a)(2)(i) ("[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal"). Nevertheless, Appellant later filed her concise statement on September 1, 2016 and, within this concise statement, Appellant listed the issue she currently raises on appeal. In accordance with our binding precedent in **_In re J.T._**, 983 A.2d 771 (Pa. Super. 2009), we conclude that Appellant's late filing of her concise statement does not result in the waiver of her claim on appeal. **_In re J.T._**, 983 A.2d at 774-775 ("[i]f late filing of the 1925 statement waived [the m]other's appeal rights in this case, there has been _per se_ ineffectiveness of counsel just as there was for the appellant in [**_Commonwealth v. Burton_**, 971 A.2d 428 (Pa. Super. 2009) (_en banc_)]. We conclude that, as in **_Burton_**, in parental termination cases a late filing of a required 1925 statement does not mandate a finding of waiver").

On appeal, Appellant claims that the evidence was insufficient to support the termination of her parental rights. We have explained:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

- 9 -

As [the Pennsylvania Supreme Court] discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Appellant's parental rights under section 2511(a)(2), (5), (8), and (b). We will focus on section 2511(a)(2) and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-

- 10 -

being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In her brief, Appellant contends that the Agency did not meet its burden of proof with regard to section 2511(a)(2). Specifically, Appellant claims that the Agency did not prove that "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." *See id.* Appellant argues:

While it may be true that [Appellant] struggles with responsible and adult behavior, these allegations overlook the significant efforts that [Appellant] made in addressing those concerns. The [trial] court [] recognized those efforts on multiple occasions, noting that [Appellant] had completed a drug and alcohol education program, a victim awareness program, and the "Tools for Success" program while incarcerated. The [trial] court also noted that [Appellant] had participated in drug and alcohol counseling, obtained a high school diploma, and became certified as a fiber optics installer. Although she has had a long struggle with drug abuse, [Appellant] consistently tested negative for illegal drug use after she was paroled. Perhaps most

- 11 -

> importantly, she began visits with her son, which she had sought and been denied while she was incarcerated.

Appellant's Brief at 8 (internal citations omitted).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:

> (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002).

The trial court concluded its analysis of section 2511(a)(2) as follows:

> The Agency's initial concerns with [Appellant] have not changed. She has had a drug problem for a majority of the dependency proceedings. [Child] was declared dependent due to [Appellant] overdosing on heroin. [Appellant] was not able to parent because she was incarcerated. When [Appellant] did go to a halfway house, not only did she test positive for alcohol, she then absconded. Subsequently, she was arrested and jailed until June 2016. [Appellant] has made a series of poor decisions that led to her serving time in prison and residing in a halfway house. Once paroled, she failed to communicate with the Agency in an effort to reestablish a bond with [Child].

. . .

> While incarceration alone is not a basis for involuntary termination of parental rights, the [trial court] may inquire about the parent utilizing resources at her command while in prison to continue and pursue a close relationship with the child. [Appellant] did petition [the trial court] for visits in prison, but that [was] the extent of her utilizing resources. She was not in contact with the Agency. Even when [Appellant] resided at the halfway house, she failed alcohol tests and her supervised visits were stopped. Her ongoing substance abuse issues make her a danger to [Child].

Trial Court Opinion, 11/29/16, at 7-8 (internal citations omitted).

After a careful review of the record in this matter, we find the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. We, therefore, affirm the termination of Appellant's parental rights with regard to Child under section 2511(a)(2).

Next, we review the termination of Appellant's parental rights under section 2511(b). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [the Pennsylvania Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Appellant does not claim that the evidence was insufficient to support the termination of her parental rights under section 2511(b). Nevertheless, as the trial court stated, the evidence was indeed sufficient to support termination under that subsection:

> [Appellant's] last visit [with Child] was in October 2015, and the visit was cut short due to [Appellant] having a "breakdown." . . . She has not had a visit or contact with [Child] since October 2015. [Child] has clearly bonded with his foster family [and the foster family has indicated that they wish to adopt Child]. Severing the parent-child bond is in [Child's] best interest as [Appellant] will never be in a position to provide a stable environment for [Child].

Trial Court Opinion, 11/29/16, at 8.

After a careful review of the record in this matter, we find the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. In its opinion, the trial court

- 14 -

found that Child has been in placement in the same foster home for approximately two years – and ever since Child was one year old. Accordingly, it was proper to find that no bond exists and that Child would suffer no permanent emotional harm if Appellant's parental rights were terminated. ***In re K.Z.S.***, 946 A.2d 753, 764 (Pa. Super. 2008). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." ***In re Adoption of C.L.G.***, 956 A.2d at 1007, *citing* ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting"). We, therefore, affirm the termination of Appellant's parental rights with regard to Child under section 2511(b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/19/2016</u>